UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :

                vs.          :          CRIMINAL NO.  3:03CR178(RNC)

CHAUNCEY MOORE          :          January 13, 2006

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS

I. Introduction

On December 2, 2005, this Honorable Court held a telephone status conference with counsel in which the Court sought supplemental input regarding certain questions:

1.    "[W]hen does the Constitutional [Sixth Amendment] violation happen?  When the officer elicits the statement outside the presence of counsel or when the statement is offered by the prosecutor at trial?"

2.    "And if the defendant's Sixth Amendment right to counsel was violated in the [Pine] interview" regarding state charges pending at that time, in light of Texas v. Cobb, 532 U.S. 162 (2001), and United States v. Mills, 412 F.3d 325 (2d. Cir. 2005), are the defendant's statements (and the gun found as a direct result of those statements) nevertheless admissible in a federal criminal proceeding for a federal offense which was added after the violation as long as the federal offense is not the "same offense" as any of the state offenses which it has supplemented?

The purpose of this supplemental memorandum, which incorporates by reference the Defendant's prior memoranda and all arguments made therein, is to answer those questions as follows:

1.    The Sixth Amendment right to counsel is violated both (a) when law enforcement obtains evidence by circumventing an accused's right to have counsel present and (b) when such evidence is used against him at trial.

2.    The firearm and surrounding statements should be suppressed because (a) the Norwalk Police violated Mr. Moore's Sixth Amendment right to counsel by questioning him about charged offenses in the absence of counsel, rendering inapposite the Supreme Court's holding in Texas v. Cobb that questioning about separate albeit factually intertwined offenses does not violate the Sixth Amendment and (b) even if the Supreme Court's holding in Texas v. Cobb were applicable to this case because it could be interpreted to mean that the fruits of a Sixth Amendment violation under certain circumstances can be used to prosecute separate albeit factually intertwined offenses, the Court should nevertheless suppress under its supervisory powers under the peculiar facts of this case.

- 2 -

II    The Exclusionary Rule Acts To Deter Police Misconduct And Preserve Judicial Integrity

This Honorable Court's questions bring to mind a story told by the famous barrister Clarence Darrow about himself.  One day, shortly after an alarm spread through town that the bank had been robbed, a perspired and out of breath man came into Mr. Darrow's office through the back door, placed a bag of money on his desk and told him that he needed to retain counsel.  Mr. Darrow felt constrained to tell the man, "I could not possibly accept money so recently stolen."  Mr. Darrow understood that larceny and receipt of stolen property are *both* offenses and correctly concluded prudentially that he could not accept the money (no matter how alluring).  This supplemental memorandum will endeavor to explain how prudence dictates that this seemingly complex case boils down to the same conclusion regarding the firearm that the government has brought to this Honorable Court.

The analogy of Mr. Darrow's dilemma to that of this Honorable Court in this case might perhaps, at first blush, seem inapt.  The validity of the parallel, however, is reflected in the argument of former Chief Justice Rehnquist (the principal author of Texas v. Cobb) in his dissent in Bartnicki v. Vopper, 532 U.S. 514 (2001):

> The 'dry up the market' theory, which posits that it is possible to deter an illegal act that is difficult to police by preventing the wrongdoer from enjoying the fruits of the crime, is neither novel or implausible.  It is a time-tested theory that undergirds numerous laws, such as the prohibition of the knowing possession of stolen goods.  See W. LaFave & A. Scott, Substantive Criminal Law § 8.10(a), p. 422 (1986)('Without such receivers, theft ceases to be profitable.  It is obvious that the receiver must be a principal target of any society anxious to stamp out theft in its various forms').  *We ourselves adopted the exclusionary rule based upon similar reasoning*, believing that it would 'deter unreasonable searches,' Oregon v. Elstad, 470 U.S. 298 (1985), by removing an officer's 'incentive to disregard [the Fourth Amendment],' Elkins v. United States, 364 U.S. 206, 217 (1960).

Bartnicki, 532 U.S. at 550-51(Rehnquist, J., dissenting) (emphasis added). While it is important to recognize that deterrence of police wrongdoing is an important consideration undergirding the exclusionary rule, it is also important to recognize the imperative of judicial integrity.  As explained in Terry v. Ohio, 392 U.S. 1 (1968):

> The [exclusionary] rule serves another vital function – 'the imperative of judicial integrity.'  Elkins v. United States, 364 U.S. 206, 222 (1960).  Courts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of our citizens by permitting unhindered governmental use of the

- 3 -

> fruits of such invasions. Thus in our system evidentiary rulings provide the context in which the judicial process of inclusion and exclusion approves some conduct as comporting with constitutional guarantees and disapproves other actions by state agents. A ruling admitting evidence in a criminal trial, we recognize, has the necessary effect of legitimizing the conduct which produced the evidence, while an application of the exclusionary rule withholds the constitutional imprimatur.

Terry, 392 U.S. at 12-13. Thus, while former Chief Justice Rehnquist's recognition in his dissent in

Bartnicki v. Vopper of the parallel between receiving stolen property and receiving unconstitutionally

obtained evidence is illuminating, the extent of the parallel is actually greater than his explication sets

forth. When, as in this case, the police disregard not only the Sixth Amendment of the Constitution,

but also an unequivocal and explicit Court order to produce a charged defendant in court forthwith so

that his Constitutional Sixth Amendment right to counsel can be effectuated, in order to obtain evidence

without the anticipated interference of counsel, the ultimate success of that illegitimate enterprise

depends upon a court's complicity in permitting the evidence to be introduced in a trial of the defendant.

It is respectfully submitted that to understand the considerations which coalesce to form a correct

conclusion regarding issues of the type presented in this case, it is necessary to consider the "big

picture" by stepping back from it as one would step back from a painting to gain proper perspective.

In creating and implementing the exclusionary rule, it is readily apparent that the United States Supreme

Court does not view the rights contained within the Bill of Rights – i.e., such provisions as the Fourth

Amendment, Fifth Amendment and Sixth Amendment – in alien juxtaposition to each other, but rather

as having a communal existence in which the meaning of each interpenetrates the others. For example,

the Supreme Court in Boyd v. United States, 116 U.S. 616 (1886), explained the interplay of rights

contained in the Bill of Rights (with particular focus on the Fourth and Fifth amendments) as follows:

> We have already noticed the intimate relation between the two amendments. They throw great light on each other. For the 'unreasonable searches and seizures' condemned in the fourth amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the fifth amendment; and compelling a man 'in a criminal case to be a witness against himself,' which is condemned in the fifth amendment, throws light on the question as to what is an 'unreasonable search and seizure' within the meaning of the fourth amendment. And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself.

- 4 -

Id. at 633.  Recognition of the interrelationship between the rights in the Bill of Rights clearly informed the creation and implementation of the exclusionary rule:  "The philosophy of each Amendment and of each freedom is complementary to, although not dependent upon, that of the other in its sphere of influence – *the very least that together they assure in either sphere is that no man is to be convicted on unconstitutional evidence*."  Mapp v. Ohio, 367 U.S. 643, 657 (1961) (emphasis added).

      III       The Norwalk Police Violated Mr. Moore's Right To Counsel And
                     The Fruits Of That Violation Should Be Deemed Inadmissible

      In Massiah v. United States, 377 U.S. 201 (1964), the United States Supreme Court observed that, "Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes [*both*] the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crimes."  Id. at  205 (quoting People v. Waterman, 175 N.E. 2d 445, 448 (NY 1961)).  Regarding the Court's question about when a Sixth Amendment violation occurs, one such occurrence is when the evidence is obtained[1] and another when courts admit the evidence at a trial.  As to the latter and its effect on "the basic dictates of fairness in the conduct of criminal causes," the United States Supreme Court has made it clear that a defendant is "denied the basic protections of ... [the Sixth Amendment's] guarantee *when there [i]s used against him at trial* evidence of his own incriminating words, which ... [were] deliberately elicited from him after he had been indicted and in the absence of counsel."  Massiah v. United States, 377 U.S. 201, 206 (1964) (emphasis added).  As to the former as it effects "the fundamental rights of persons charged with crimes," the United States Supreme Court has made it clear that, "the Sixth Amendment is [also] violated *when the State obtains incriminating statements* by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent."  Maine v. Moulton, 474 U.S. 159, 176 (1985) (emphasis added).  It is by appreciating the interplay of the Sixth Amendment right to counsel with the other rights it intersects that an understanding emerges regarding why the correct answer to this Honorable Court's first question is "both".

_____

1. Arguably a violation occurs even absent obtaining, much less using, any evidence resulting from an attempt to circumvent counsel.  See United States v. Morrison, 449 U.S. 361 (1981).

- 5 -

The Supreme Court takes a "pragmatic approach" when assessing issues relating to the right to counsel. See Patterson v. Illinois, 487 U.S. 285, 298 (1988). The right to counsel does not exist in a vacuum but rather exists in order that counsel can act to protect other rights. Every practicing lawyer – prosecutor or defense attorney – knows that a confession is tantamount to a guilty plea. In deciding whether to accept a guilty plea courts have traditionally inquired whether it is being offered "voluntarily" and "intelligently" with a full understanding and appreciation of its consequences after *consultation with (or at least an opportunity to consult with) counsel.* The notion sometimes put forth by the government (but never accepted by any court) – that the right to counsel only exists in connection with a trial – ignores the reality that 95% or more of all criminal cases are resolved without trial and would pretend that counsel is superfluous if the accused elects to confess (i.e., to plead guilty or to render a trial an anticlimactic exercise).

It is important to realize and appreciate the ramifications of the fact that law enforcement officers (1) know full well the importance of a confession and (2) believe with absolute certitude that a defense lawyer, if one is involved, will only interfere with and impede their desire to obtain one. This Honorable Court should not forget what Sergeant Pine told Mr. Moore at a subsequent point in time that I, the undersigned lawyer, was known by Sergeant Pine to be representing him: "Listen, you're going to have to – don't play shit like, well I want to talk to my lawyer. I mean you can talk to your lawyer, that's your right, that's part of the Constitution. But when you say that, the cops can't talk to you no more, you know. You know what I'm saying?" Defense ex. V. This Honorable Court should understand what he was saying. It would be beyond naive to believe that Sergeant Pine (and his colleagues) saw the world differently before Mr. Moore had a lawyer or, more importantly, that he (and his colleagues) did not exploit the absence of counsel to inveigle the location of the firearm.

There can be no question that the Norwalk Police, and Sergeant Pine in particular, "deliberately elicited" the location of the firearm outside the presence of counsel and in the absence of any waiver whatsoever of Mr. Moore's Sixth Amendment rights. The Second Circuit Court of Appeals held in United States ex rel. Robinson v. Zelker, 468 F.2d 159 (1972), that where a state arrest warrant had been

- 6 -

issued by a judge based upon an "information upon oath", "adversary judicial proceedings" had been initiated such that the defendant's Sixth Amendment right had attached when he was in a police station after his arrest but prior to arraignment. Id. at 163. The Norwalk Police certainly understood Mr. Moore's status on September 24. Sergeant Pine testified in pertinent part as follows (T1-189, emphasis added):

> Q.    Did you ever tell ... [Mr. Moore] that he wasn't going to be charged by the state in connection with the case if he told you where the gun was?
>
> A.    No.  He was already charged by the state.  He was arrested [on those charges].

The Supreme Court recently reaffirmed in Fellers v. United States, 124 S.Ct. 1019 (2004), that a Sixth Amendment violation occurs (inter alia) at the time the incriminating evidence is obtained:

> The [Eighth Circuit] Court of Appeals erred in holding that the absence of an 'interrogation' foreclosed petitioner's claim that the jailhouse statements should have been suppressed as fruits of the statements taken from petitioner at his home.  First, there is no question that the officers in this case 'deliberately elicited' information from the petitioner.  Indeed, the officers, upon arriving at petitioner's house, informed him that their purpose in coming was to discuss his involvement in the distribution of methamphetamine and his association with certain charged co-conspirators.  **Because the ensuing discussion took place after petitioner had been indicted, outside the presence of counsel, and in the absence of any waiver of petitioner's Sixth Amendment rights, the Court of Appeals erred in holding that the officers' actions did not violate the Sixth Amendment standards established in Massiah and its progeny.**

Id. at 1023  (emphasis added).  It is thus incontrovertible that there was a "Constitutional violation" of Mr. Moore's Sixth Amendment right to assistance of counsel when the police obtained incriminating statements and the firearm by knowingly circumventing Mr. Moore's right to have counsel present.

Incriminating statements taken in violation of the Sixth Amendment right to assistance of counsel will not be admitted at trial.  Massiah v. United States, 377 U.S. 201, 206 (1964).  Moreover, as a "fruit of the poisonous tree," the firearm recovered as a proximate result of the violation must be suppressed as well.  As the Supreme Court explained in Nix v. Williams, 467 U.S. 431 (1984): "Although Silverthorne [Lumber Co. v. United States, 251 U.S. 385 (1920)] and Wong Sun [v. United States, 371 U.S. 471 (1963)] involved violations of the Fourth Amendment, the 'fruits of the poisonous tree' doctrine has not been limited to cases in which there has been a Fourth Amendment violation.  The

- 7 -

Court has applied the doctrine where the violations were of the Sixth Amendment, *see* United States v. Wade, 388 U.S. 218 (1967), as well as of the Fifth Amendment." Id. at 442.  Therefore, this Honorable Court should apply the exclusionary rule to the firearm.

IV     The Supreme Court's Ruling Texas v. Cobb Does Not Enable The Use Of Evidence Obtained By State Law Enforcement Agents In Violation Of Constitutional Rights To Be Used In Collateral Federal Criminal Prosecutions.

The United States Supreme Court in Texas v. Cobb, 532 U.S. 162 (2001), held that the Sixth Amendment right to assistance of counsel attaches only to two categories of offenses:  (1) charged offenses and (2) uncharged offenses that would be considered the "same offense" as (or "identical" to) charged offenses under the criteria of Blockburger v. United States, 284 U.S. 299 (1932).  The case at bar is in the first category because Mr. Moore was questioned exclusively about charged offenses.  The government argues that it is not in the second category because the federal charges are not the "same offense".  Because it is abundantly clear that on September 24, 2002, the Norwalk Police were conducting an investigation of the pending Connecticut charges, not some potential future federal firearms charge, the Supreme Court's holding in Texas v. Cobb regarding the ambit of second category cases is simply inapposite to this case.  The actual issue in this case is whether statements and the firearm's location as disclosed by said statements made to police officers during questioning that violated Mr. Moore's Sixth Amendment rights may be used by the federal government to prove other crimes arising out of the same transaction as the charged offenses.  The United States Supreme Court has expressly abandoned "dual sovereignty" in the context of holding that evidence obtained by state law enforcement officers in violation of a defendant's Constitutional rights "is inadmissable over the defendant's timely objection in a federal criminal trial."  Elkins v. United States, 364 U.S. 206, 223 (1960).  Inasmuch as nothing in Texas v. Cobb indicates that Elkins v. United States has been overruled, any lower Court is bound to apply Elkins v. United States.  Indeed, Cobb stressed that, "Constitutional rights are not defined by inferences from opinions which did not address the question at issue."  121 S.Ct. at 1341.  Accord Agostini v. Felton, 521 U.S. 203, 237 (1997) (warning that lower courts should not conclude that more recent Supreme Court cases have, by implication, overruled earlier precedents).

- 8 -

The Supreme Court's cautionary admonition is understandable as follows.  The Ninth Circuit Court of Appeals stated the following in <u>United States v. Covarrubias</u>, 179 F.3d 1219 (9th Cir. 1999):

> On the basis of a uniform reading of two Supreme Court cases, every circuit to consider the question, including our own, has recognized that 'an exception to the offense-specific requirement of the Sixth Amendment occurs **when *the pending charge* is so inextricably intertwined with *the charge under investigation* that the right to counsel for the pending charge cannot be constitutionally isolated from the right to counsel for the uncharged offense**.'

<u>Id</u>. at 1223, (emphasis added), citing a series of cases.  The Second Circuit Court of Appeals thereafter observed in <u>United States v. Mills</u>, 412 F.3d 325 (2d. Cir. 2005), that, "Prior to <u>Cobb</u>, some lower courts had held that the right to counsel attached to uncharged crimes that were 'factually related' to a specifically charged offense. <u>See</u> <u>United States v. Covarrubias</u>, 179 F.3d 1219 (9th Cir. 1999) ... [and the series of cases it cited]. <u>Cobb</u> rejected this approach." <u>Mills</u>, 412 F.3d at 3259, n.1.  That is exactly right: <u>Cobb</u> distinguished pending charges from those still being investigated even if arising from the same transaction and, as to the latter, used the test derived in <u>Blockburger</u> to determine if the charge under investigation was the "same offense" as a charged offense.  The Second Circuit Court of Appeals in <u>Mills</u> held that, "statements obtained in violation of Mill's right to counsel as to the state proceedings must also be suppressed in the federal proceedings because the two proceedings were for the 'same offense,' each requiring proof of identical essential elements." <u>Id</u>. at 327.  Although it thus never reached the issue present in the case at bar, it is highly significant that the Court in <u>Mills</u> cited the holding of  <u>Elkins v. United States</u>, 364 U.S. 206 (1960), "that 'articles obtained as the result of an unreasonable search and seizure by state officers, without the involvement of federal officers' may not 'be introduced in evidence against a defendant over his timely objection in a federal criminal trial.'" <u>Id</u>. at 330.  It is also significant that <u>Mills</u> rejected the government's attempted application of <u>United States v. Avants</u>, 278 F.3d 510 (5th Cir. 2002): "<u>Avants</u> is readily distinguishable because the relevant statements were made to FBI agents who were investigating a crime unrelated to the murder for which the defendant was initially prosecuted by the state and later prosecuted by the federal government." The Court of Appeals in <u>Mills</u> did not hold that statements made to police officers during the course of questioning that violated the Sixth Amendment rights of the defendant in a state case may be used

- 9 -

by the federal government to prove other crimes arising out of the same transaction as long as those other crimes are not the "same" as any of the state charges which were the subject of the interrogation. Rather, they simply did not need to reach the issue presented in the case at bar due to the identity of offenses. They certainly intimated, however, that they would apply Elkins regardless.

> V.     Even If The Supreme Court's Holding In Texas v. Cobb Is Applicable To This
>         Case, The Court Should Nevertheless Suppress Under Its Supervisory Powers

The United States Supreme Court has long recognized the supervisory power of District Courts to suppress evidence:

> Federal courts may use their supervisory power in some circumstances to exclude evidence taken from the defendant by 'wilful disobedience of law.' McNabb v. United States, 318 U.S. 332, 345 (1943); see Elkins v. United States, 364 U.S. 206, 223 (1960); Rea v. United States, 350 U.S. 214, 216-217 (1956); cf. Hampton v. United States, 425 U.S. 484, 495 (1976)(Powell, J., concurring in judgment). * * * The supervisory power ... permits federal courts to supervise 'the administration of criminal justice' among the parties before the bar. McNabb v. United States, 318 U.S., at 340.

United States v. Payner, 447 U.S. 727, 735-737 fn7 (1980). In McNabb v. United States, 318 U.S. 332 (1943), federal agents interrogated the defendants without arraigning them as federal statutes required. The defendants challenged the admission of their confessions on coercion grounds. The Supreme Court, declining to reach the coercion issue, held that its "supervisory authority over the administration of criminal justice in the federal courts" required it to exclude the evidence. Id. at 341. The Court reasoned that exclusion was necessary to avoid "making the courts themselves accomplices in wilfull disobedience of law." Id. at 345. In addition, the Court invoked supervisory power on the basis of the Courts' responsibility for "establishing and maintaining civilized standards of procedure" beyond the minimal protections of due process. Id. at 340. In Elkins v. United States, 364 U.S. 206 (1960), the Court added a deterrence rationale for suppressing evidence under supervisory power. While retaining the imperative of judicial integrity rationale, the Court posited that exclusion was also necessary to discourage police misconduct. The Court in McNabb invoked supervisory power to maintain the integrity of the Court to insulate the Court from tainted evidence.

The Government's claim in the case at bar is that, although the Norwalk Police violated Chauncey Moore's Sixth Amendment right to counsel vis-a-vis the charges pending against him when

- 10 -

it deliberately elicited a confession from him in the absence of counsel which included the location of

the firearm, under the holding of Texas v. Cobb Mr. Moore had no Sixth Amendment right to counsel

as to supplemental charges which are "different" under Blockburger.  That claim, even if a valid

interpretation of Cobb, would only establish that the wrongful police conduct fell just short of a

constitutional violation as it relates to the charges in this case.  As explained by the Second Circuit

Court of Appeals, "the exclusionary rule has application to governmental conduct which falls short of

constitutional transgression" via its supervisory power.  United States v. Hammad, 858 F.2d 834, 840-

41 (1988).  The Second Circuit (with approval) specifically noted regarding the suppression of evidence

in the absence of a constitutional violation pursuant to supervisory power that,

> In [United States v.] Thomas, [474 F.2d 110 (10th Cir. 1973),] the Tenth Circuit
> excluded a defendant's written statement obtained by a state law enforcement agent
> without the knowledge or consent of defense counsel.  Specifically, the court held that
> 'once a criminal defendant has either retained an attorney or had one appointed for him
> by the court, any statement obtained by interview from such defendant *may not be
> offered in evidence for any purpose* unless the accused's attorney was notified of the
> interview...."  Thomas, 474 F.2d at 112 (emphasis added).

Hammad, 858 F.2d at 841.

The fact that the Sixth Amendment is not the only constitutional source of a right to counsel is

important to this consideration.  Although the Fifth Amendment expressly addresses the right against

self-incrimination and does not address the right to counsel expressly, the Supreme Court in Miranda

v. Arizona, 384 U.S. 436, 469 (1966), concluded that the right to have an attorney present during police

questioning is indispensable to the protection of the Fifth Amendment rights.  The Fifth Amendment

right to counsel recognized in Miranda, while characterized as a "prophylactic rule," see, e.g., Withrow

v. Williams, 507 U.S. 680, 690 (1993) ("we have sometimes called the Miranda safeguards

'prophylactic' in nature"), nevertheless is of sufficient constitutional derivation to be impervious to

Congressional action which might overturn it.  See Dickerson v. United States, 530 U.S. 428, 438

(2000) ("Miranda is a constitutional decision").  At times, a defendant is protected by both.  See, e.g.,

Brewer v. Williams, 430 U.S. 387, 395 (1977).  The case at bar exemplifies one of those times.  It is

critically important to understanding the controlling principles in the case at bar, particularly when

- 11 -

addressing the holdings of <u>Texas v. Cobb</u>, 532 U.S. 162 (2001), and in turn <u>United States v. Mills</u>, 412 F.3d 325 (2005), to understand the interplay between the Fifth and Sixth Amendment rights to counsel disputed in <u>Michigan v. Jackson</u>, 475 U.S. 625 (1986), and then discussed indirectly in the controlling opinion in <u>Cobb</u> (at footnote 2) and directly in Justice Kennedy's concurring opinion.

Raymond Cobb, who had counsel on charges pending against him, was questioned by police officers who first informed him of his right to have his counsel present during questioning. Mr. Cobb expressed a voluntary choice to forgo assistance of counsel and instead made a knowing election to speak outside his counsel's presence. The Supreme Court, while divided over whether the Sixth Amendment, standing alone, provided Mr. Cobb a right to counsel separate and apart from the Fifth Amendment, was unanimous in its view that the police were correct when they informed Mr. Cobb that he had a right to counsel at that juncture regardless of the fact that the focus of the interrogation was not the charges which were pending at that time but rather on factually related separate charges. The Court was unanimous in its view that, "there can be no doubt that a suspect must be apprised of his rights against compulsory self-incrimination and to consult with an attorney before authorities may conduct a custodial interrogation." <u>Texas v. Cobb</u>, 532 U.S. at 171. The Supreme Court's majority opinion stressed that the police "scrupulously" complied with <u>Miranda</u> and added the following observation predicated thereon:

> Even though the Sixth Amendment right to counsel has not attached to uncharged offenses, defendants retain the ability under <u>Miranda</u> to refuse any police questioning and, indeed, ***charged defendants presumably have met with counsel*** and have had the opportunity to discuss whether it is advisable to invoke those Fifth Amendment rights. ***Thus, in all but the rarest of cases, the Court's decision today will have no impact upon a defendant's ability to protect his Sixth Amendment right.***

<u>Texas v. Cobb</u>, 532 U.S. at 171, n.2 (emphasis added). The case at bar would parallel <u>Cobb</u> in this critical respect if the police had complied with their obligation to produce Mr. Moore in court and then thereafter had approached him and he had knowingly, intelligently and voluntarily elected to forego the presence of counsel prior to disclosing the location of the firearm. But they disobeyed the court's order to arraign him, did not advise Mr. Moore of his rights or obtain a waiver, and thereby circumvented counsel in obtaining the firearm. The case at bar is thus one of the "rarest of cases" foretold in <u>Cobb</u>.

- 12 -

Because the government is seeking to use the fruits of the Norwalk Police investigation, this case should be viewed as though federal agents disregarded an express and explicit directive of this Honorable Court to present Mr. Moore in court forthwith upon arrest and exploited their omission by inveigling the location of the firearm without advising Mr. Moore of his right to counsel and obtaining a knowing, voluntary and intelligent waiver thereof.  See United States v. Sorenson, 330 F.2d 1018, 1020 n.1 (2d Cir. 1964) ("the admissibility of the ... [evidence so obtained] is to be judged *as if the conduct were that of federal officers.* Elkins v. United States, 364 U.S. 206 (1960)" (emphasis added). If the police had complied with the explicit command in the warrant to present Mr. Moore in court on the morning of September 24, 2002, he would have been advised of his rights and had counsel appointed.  Consistent with the Second Circuit's citation to Elkins in Sorenson, and particularly in light of its citation to Elkins in United States v. Mills, 412 F.3d 325, 330 (2d. Cir. 2005), this Honorable Court has the power to suppress evidence even in the absence of a direct Constitutional violation through its supervisory power regarding the conduct of the Norwalk Police in this case.  The fact that those officers had a "working arrangement" with federal agents in this case (and typical of this era) only reinforces that conclusion.

The defendant recognizes that courts cannot use their supervisory powers to "fashion their own 'sub-constitutional' limitations on the conduct of law enforcement officials."  United States v. Myers, 692 F.2d 823, 847 (2d Cir. 1982).  But the Second Circuit has recognized the difference between micro-managing how federal agents conduct their investigations and censuring misconduct which derogates important rights connected to the right to counsel.  See United States v. Ming He, 94 F.3d 782, 792-793 (2d Cir. 1996).  While the Court of Appeals in Ming He emphasized that they were sanctioning prosecutorial misconduct, not police misconduct, the peculiar context of the case at bar makes such a distinction immaterial.  Police officers and prosecutors are both under an affirmative obligation not to circumvent or exploit the protections guaranteed by the Sixth Amendment.  Maine v. Moulton, 474 U.S. 159, 170-71 (1985); Michigan v. Jackson, 475 U.S. 625, 634 n. 8 (1985).  In McNabb v. United States, 318 U.S. 332 (1943), federal agents interrogated the defendants without arraigning them as

- 13 -

federal statutes required.   The Supreme Court held that its "supervisory authority over the administration of criminal justice in the federal courts" required it to exclude the evidence. Id. at 341. As it pertains to this issue, the only difference between the case at bar and McNabb is that agents in McNabb disregarded a statute which directed them to present an arrestee in court forthwith and the officers in this case disregarded an explicit court order to present an arrestee in court forthwith. Therefore, even if the Supreme Court's holding in Texas v. Cobb were applicable to this case because it could be interpreted to mean that the fruits of a Sixth Amendment violation under certain circumstances can be used to prosecute separate albeit factually intertwined offenses, the Court should nevertheless suppress the firearm under its supervisory powers under the peculiar facts of this case.

VI    The "Public Safety" Exception Does Not Apply To Excuse Miranda Warnings

In the telephone conference this Honorable Court stated regarding the "public safety" exception of New York v. Quarles, 467 U.S. 649 (1984), to Miranda,

> And as to that, it seems to me that the exception applies.  It is a bit of a stretch because I can't find a case where the exception applied in these or analogous circumstances.  But it's clear to me as a matter of principle that the defendant's view of the exception is too narrow to say or to suggest that it only applies to arresting officers at the scene of an arrest in circumstances involving hot pursuit or some similar exigency is contrary to case law.  I've not found a case that says that.

With respect, the case that expresses those principles is New York v. Quarles itself.  The Supreme Court explained the controlling concepts in Quarles as follows:

> In recognizing a ***narrow exception*** to the Miranda rule in this case, we acknowledge that to some degree we lessen the desirable clarity of that rule.  * * * As we have in other contexts, we recognize here the importance of a workable rule 'to guide police officers, ***who have only limited time*** and expertise to reflect on and balance the social and individual interests involved ***in the specific circumstances*** they confront.' Dunaway v. New York, 442 U.S. 200, 213-14 (1979).  But as we have pointed out, we believe that the exception which we recognize today lessens the necessity of that ***on-the-scene*** balancing process.

467 U.S. at 658 (emphasis added).  The Court will recall that the detective in charge of the investigation in this case assigned Detectives Murray and Weisgerber to question Mr. Moore in the lock-up about the firearm.  Obviously, Detectives Murray and Weisgerber would have familiarized themselves with all known facts of the case prior to going to the lockup.  The Court will recall the following colloquy with

- 14 -

Detective Weisgerber at the hearing (T1-166):

> Q.   Okay. Going back to when you went to talk to him in the lockup in the morning shortly before 9:00, you did not give the <u>Miranda</u> warnings, correct?
>
> A.   Correct.
>
> Q.   Would it be fair to say that you purposely did not give him <u>Miranda</u> warnings because you were afraid if you did he might heed them and not talk to you?
>
> A.   No.
>
> * * *
>
> Q:   Did you have any particular reason or would you have had any particular reason that morning not to give Mr. Moore <u>Miranda</u> warnings at approximately 9:00 had he indicated a willingness to talk to you?
>
> A:   If he had agreed and was awake and was going to speak with us, would I have given him <u>Miranda</u> [warnings]?
>
> Q:   Yes.
>
> A:   Yes, I would.
>
> Q:   There would have been no reason why you wouldn't have, correct?
>
> A:   Correct

As recognized by Detective Weisgerber, no "exigent circumstances" would have justified the withholding of <u>Miranda</u> warnings in the lock-up at 8:50 a.m. Could it be that Sergeant Pine knew more about, to quote <u>Quarles</u>, *__the specific circumstances__* at 2:30 p.m. which would have objectively justified the withholding of <u>Miranda</u> warnings? It is respectfully submitted that to ask the question is to answer it and to reveal the flaw in the government's position. <u>Compare United States v. Estrada</u>, 430 F.3d 606, 609-614 (2d Cir. 2005), decided a few days before the telephone conference. While this question is important, it is not central to the dispositive issue of the firearm inasmuch as a mere <u>Miranda</u> violation does not require the suppression of the physical fruits of unwarned statements. <u>See United States v. Patane</u>, 124 S.Ct. 2620 (2004). Nevertheless, the Court should not find that the government has met its burden of proof or persuasion on this issue.

- 15 -

VI    <u>Conclusion</u>

_____Mr. Moore stands by his position that all statements taken and evidence obtained on September 24, 2002, were obtained in violation of his Sixth Amendment right to assistance of counsel and must, therefore, be suppressed.  It is furthermore his position that  even if  the Supreme Court's holding in <u>Texas v. Cobb</u> were applicable to this case because it could be interpreted to mean that the fruits of a Sixth Amendment violation under certain circumstances can be used to prosecute separate albeit factually intertwined offenses, the Court should nevertheless suppress under its supervisory powers under the peculiar facts of this case.  Finally, it remains his position that all statements taken on September 24, 2002, were obtained in clear violation of his rights under <u>Miranda</u> and must, on that alternative basis, be suppressed.

Respectfully submitted,

The Defendant,
Chauncey Moore

Thomas G. Dennis
Federal Defender


Dated:  January 13, 2006                          /s/
                                                  Gary D. Weinberger
                                                  Asst. Federal Defender
                                                  10 Columbus Blvd, FL 6
                                                  Hartford, CT  06106-1976
                                                  Bar No. ct05085
                                                  (860) 493-6260
                                                  Email: gary.weinberger@fd.org

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Supplemental Memorandum has been mailed to Paul A. Murphy, Assistant United States Attorney, United States Courthouse, 915 Lafayette Boulevard, Bridgeport, CT 06604, on this 13 day of January 2006.


/s/
Gary D. Weinberger